UNITED STATES DISTRICT COURT                    O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| CARLOS NOYOLA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-146 |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is the self-styled "Opposed Motion to Remand"[1] filed by Plaintiff Carlos Noyola ("Noyola"). Defendant State Farm Lloyds ("State Farm") has filed a response in opposition ("Response").[2] After considering the motion, response, record, and relevant authorities, the Court **DENIES** the motion to remand.

### I. BACKGROUND

On February 10, 2013, Noyola filed suit in state court, asserting that State Farm had violated the terms of a property insurance policy with regard to a hailstorm claim.[3] State Farm was served with citation on February 28, 2013, and filed its answer in state court on March 14, 2013.[4] State Farm thereafter removed the case to this Court on March 28, 2013, asserting subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1446.[5]

On April 29, 2013, Noyola filed the instant motion to remand, asserting that the requirements of diversity jurisdiction were not satisfied due to an insufficient amount in

---

[1] Dkt. No. 5 ("Motion to Remand").
[2] Dkt. No. 9 ("Response").
[3] Dkt. No. 1, Attach. 2 at pp. 3-16 ("Petition").
[4] Dkt. No. 1, Attach. 2 at pp. 17-21.
[5] Dkt. No. 1 ("Notice of Removal").

controversy. In response, State Farm expounded upon its removal position, specifically that the amount in controversy exceeds the jurisdictional threshold.

## II. DISCUSSION

Section 1332 of Title 28 of the United States Code provides that the Court has original jurisdiction of an action where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states . . . ."[6] Neither party disputes that the diversity-of-citizenship requirement is met. Instead, Plaintiff solely challenges the sufficiency of the amount in controversy.

Consistent with the sensitivity to the federalism concerns raised by removal,[7] the Court strictly construes the removal statute and "any doubt as to the propriety of removal should be resolved in favor of remand."[8] Recent revisions to 28 U.S.C. § 1446 now provide the primary framework for the Court's analysis, which was previously guided by case law. Nevertheless, the statutory provisions are largely consistent with pre-revision precedent, and the Court therefore looks to that precedent where the statute is silent.

### A. Plaintiff's Statement of Damages

In his original petition, Noyola does not include a specific damages amount and instead states that "[p]laintiff seeks damages, inclusive of attorney fees, in an amount not exceeding $75,000."[9] In his motion to remand, Noyola heavily relies upon this representation.[10] Under § 1446(c)(2), where removal is sought on the basis of diversity under §1332, "the sum demanded

---

[6] 28 U.S.C. 1332(a)(1); In re 1994 Exxon Chemical Fire, 558 F.3d 378, 387 (5th Cir. 2009).
[7] Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995) (citing Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 809 (1986)).
[8] Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008) (quoting In re Hot-Hed, Inc., 477 F.3d 320, 323 (5th Cir. 2007)) (internal quotations omitted).
[9] Petition at ¶ 23.
[10] See Motion to Remand at II(A).

in good faith in the initial pleading shall be deemed to be the amount in controversy . . . ."[11] The good-faith requirement for a controlling amount in controversy is consistent with Fifth Circuit precedent in *De Aguilar v. Boeing Co.* ("*De Aguilar II*"), which noted that "the [amount-in-controversy] inquiry, however, does not end merely because the plaintiff alleges damages below the threshold. The face of the plaintiff's pleading will not control if made in bad faith."[12] In addition to the good-faith requirement, the statute also provides that the demand in the pleading will not control if "the State practice . . . does not permit demand for a specific sum . . . ."[13] Notably, while § 1446 speaks to the violation of a specific-damages prohibition as an exception, but is largely silent about the determination of bad faith,[14] the *De Aguilar II* Court recognized the former as evidencing the latter, writing:

> These new [state-law] rules [prohibiting plaintiffs "from pleading for specific amounts in cases of unliquidated damages"] have created the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading. Such manipulation is surely characterized as bad faith.[15]

As recognized by the *De Aguilar II* Court, and asserted by State Farm in its response, Noyola's allegations violated Texas law, which prohibited plaintiffs from alleging a specific dollar amount of damages at the time the petition was filed.[16] These considerations inform the Court's opinion

---

[11] 28 U.S.C. § 1446(c)(2).

[12] 47 F.3d 1404, 1410 (5th Cir. 1995).

[13] 28 U.S.C. § 1446(c)(2)(A)(ii).

[14] The Court recognizes that the statute describes one scenario where an act is deemed bad faith, but the statute neither describes that scenario as exclusive, nor provides any other rubric for bad-faith determination. *See* 28 U.S.C. § 1446(c)(3)(B) (providing that "[i]f the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).").

[15] *De Aguilar II*, 47 F.3d at 1410.

[16] *See* Tex. R. Civ. P. 47(b) ("An original pleading which sets forth a claim for relief . . . shall contain . . . in all claims for unliquidated damages only the statement that the damages sought are within the jurisdictional limits of the court . . . ."). *See also De Aguilar II*, 47 F.3d at 1412 (quoting Rule 47(b) and describing violation through plaintiffs' allegation of specific damages). Although Rule 47(b) has since been revised to allow greater specificity of damages pleading, the revisions were only effective on March 1, 2013, after the date that the petition was filed in this case.

that, instead of pleading a legitimate estimation of damages in this case, "[a]s a functional matter, plaintiff[] [is] attempting to avoid federal jurisdiction."[17] As a result, the allegations fall within the statutory exception and precedential definition of "bad faith," and the Court finds that the amount demanded in the complaint does not control the analysis.

### B.  Defendant's Showing of Damages

In the event that the initial pleading does not control, § 1446(c)(2)(B) provides that removal is proper where a sufficient amount in controversy is supported by a preponderance of the evidence.[18] The statute, however, does not define the preponderance-of-the-evidence standard in this specific context and, again, the Court turns to pre-codification precedent. Describing the preponderance-of-the-evidence showing for the amount in controversy, the Fifth Circuit in *St. Paul Reinsurance Co., Ltd. v. Greenberg* wrote that "[t]he test is whether it is more likely than not that the amount of the claim will exceed [the jurisdictional threshold]."[19] Accordingly, the Court begins its analysis by considering whether Defendant's evidence supports a finding that the amount in controversy will "more likely than not" exceed the jurisdictional threshold.

As support for removal, Defendant provides the following evidence: (1) policy limits; (2) discovery documentation attached to the petition; and (3) Plaintiff's non-responsiveness to Defendant's request to stipulate to an amount in controversy below the jurisdictional threshold.

Evidentiary Scope. Noyola challenges the propriety of the Court's considering evidence of his non-responsiveness to Defendant's request to stipulate that the amount in controversy is

---

[17] *De Aguilar II*, 47 F.3d at 1408.
[18] 28 U.S.C. § 1446(c)(2)(B) (providing that "removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).").
[19] 134 F.3d 1250, 1254, n.13 (5th Cir. 1998) (citing Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995)) (considering removal under $50,000 jurisdictional threshold).

less than $75,000.[20] Therefore, as an initial matter, the Court addresses the scope of "summary-judgment-type" evidence which may be considered in the analysis.[21] First, it is unclear whether Noyola's non-responsiveness is accurately characterized as a post-removal document; Noyola failed to respond to State Farm's initial, pre-removal inquiry, and his responsive omission is not reflected in any post-removal documentation.[22]

Moreover, because Noyola's non-responsiveness bears on the value of the claim at the time of removal, it qualifies as valid evidence even if characterized as a post-removal submission. Citing to *St. Paul Mercury Indemnity Co. v. Red Cab Co.*,[23] Noyola argues that when determining the amount in controversy, the Court may only look at the record at the time of removal, and nothing after the removal.[24] While this principle is generally true, it is not applicable where, as here, the plaintiff has ambiguously alleged the amount of damages. The Fifth Circuit explained that "[u]nder those circumstances, the court is still examining the jurisdictional facts *as of the time* the case is removed, but the court is considering information submitted after removal."[25] Specifically, when "state court pleadings left jurisdiction ambiguous, a post-removal affidavit violates no principle of [*St. Paul Mercury*]."[26] Therefore, the Court will consider this evidence, submitted by State Farm after removal, in order to determine the amount in controversy as it existed at the time of removal.

---

[20] *See* Motion to Remand at II(C).

[21] *Allen*, 63 F.3d at 1336 (5th Cir. 1995).

[22] *See* Response, Exh. A. In his declaration, Mark Lindow, counsel for State Farm, explains, and provides supporting documentation of, his request on March 15, 2013, for a stipulation that the amount in controversy was not greater than $74,999.99. However, Mr. Lindow further explained that Orlando Lopez, counsel for Noyola, did not even respond to the stipulation request.

[23] 303 U.S. 283 (1938).

[24] Motion to Remand at II.

[25] Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A., 988 F.2d 559, 565 (5th Cir. 1993), *abrogated on other grounds by* Marathon Oil Co. v. Ruhrgas, 145 F.3d 211 (5th Cir. 1998).

[26] H & D Tire & Automotive–Hardware, Inc. v. Pitney Bowes, Inc., 250 F.3d 302, 305 n.7 (5th Cir. 2001).

Policy Limits. In determining the amount in controversy relative to coverage under an insurance policy, the Fifth Circuit in *St. Paul Reinsurance Co. v. Greenberg*.,[27] defined the "object of the litigation" as the "value of the right to be protected."[28] State Farm first directs the Court's attention to the policy limits of the policy under which Noyola is bringing this action. Those limits comprise $103,300.00 in dwelling coverage and $77,475.00 for contents coverage, a combined total of $180,775.00.[29] As a result, the insurance policy implicates an amount in controversy well-above the jurisdictional threshold, and this policy forms the contractual basis for Noyola's breach of contract claim.

In *Hartford Ins. Group v. Lou-Con Inc*., however, the Fifth Circuit later specified that the amount in controversy is more accurately reflected by the value of the claim.[30] On this basis, Noyola argues that his single, breach-of-contract claim indicates a lower amount in controversy.[31] This argument fails for two reasons. First, absent any limitation by Noyola, his breach-of-contract claim facially implicates the limits of the policy which forms the basis of the claim. Second, this nominal assertion of a breach-of-contract claim is belied by two aspects of his original petition: (1) his selection of a discovery control plan which indicates both a larger amount in controversy and a complexity beyond a mere contract dispute, consistent with Noyola's representation that "[t]his case involves complex issues and will require extensive

---

[27] 134 F.3d 1250 (5th Cir. 1998) (declaratory action).
[28] *Greenberg*, 134 F.3d at 1253 (internal quotation marks and citation omitted).
[29] *See* Response, Exh. A-2. The Court notes that the original petition requires the Court to aggregate the policy limits for both dwelling and contents coverage. Paragraph 11 of the original petition provides: "Plaintiff asked that Defendant cover the cost of repairs to the Property pursuant to the Policy *and any other available coverages under the Policy*." [emphasis added].
[30] 293 F.3d 908, 911(5th Cir. 2002) (holding that, where the claim involves the applicability of the insurance policy to a particular occurrence, "the jurisdictional amount in controversy is measured by the value of the underlying claim.") (internal quotation marks and citation omitted).
[31] *See* Motion to Remand at II(B).

discovery;"[32] and (2) his discovery requests, incorporated into his original petition, for extra-contractual information about State Farm's operational policies since 2007.[33] As a result, while the breach-of-contract claim alone implicates an amount above the jurisdictional threshold, Noyola's pleading further implicates additional, extra-contractual claims.

At this point, the Court emphasizes the glaring absence of any damages-estimate by Noyola. In determining where the amount in controversy falls within the policy-limits range, the Court notes that neither party has submitted a demand letter or an estimate by Noyola. Combined with Noyola's vague, jurisdictionally-sensitive pleading of damages in his state-court petition, this apparent avoidance of any affirmative statement of damages reeks of the "abusive manipulation" rejected by the *De Aguilar II* Court, a hide-the-ball chicanery that is the type of "tactical manipulation" which the Fifth Circuit previously cautioned "cannot be condoned."[34]

At the time of removal, Noyola's sole, legally-permissible indication of the amount in controversy was his non-responsiveness to Defendant's request to stipulate to an amount in controversy below the jurisdictional threshold;[35] this informed lack of response stands in contrast to both the ignorant omissions of other remand-seeking plaintiffs who have appeared before the Court, as well as prior affirmative refusals to stipulate by Plaintiff's counsel in similarly-postured cases before this Court. Under Fifth Circuit precedent, such a stipulation would establish with legal certainty that the amount in controversy is jurisdictionally insufficient.[36] Numerous other

---

[32] *See* Petition at A. "Level 3"-discovery under Texas Rule of Civil Procedure 190.4, the level selected by Noyola, is designed for complex cases involving greater damages and discovery than could be easily accommodated by the lower-level discovery control plans. In contrast, "Level 1"-discovery under Rule 190.2 is designed for cases involving monetary relief of $50,000 or less, and presumptively lower amounts of oral depositions.

[33] *See, e.g.,* Petition at L(5) ("Your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of windstorm and hail claims in Texas from February 10, 2007 to present . . . .") & (6) ("Your written procedures or policies (including document(s) maintained in electronic form) in place from February 10, 2007 to present that pertain to the handling of complaints made by policyholders in Texas . . . .").

[34] Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir. 1985).

[35] *See* fn. 22, *supra*.

[36] *De Aguilar II*, 47 F.3d at 1412.

district courts have considered a refusal to stipulate as a factor in determining the amount in controversy, even when presented with significantly more amount-in-controversy indicia directly from the plaintiff.[37] Within the vacuum of Noyola's relative silence, his lack of response carries even greater resonance, and the Court finds it indicative that the amount in controversy likely exceeds the jurisdictional threshold.

In light of the ambiguous pleading, the policy limits of $180,775.00, the claim directly asserted in the petition and those implied by both the state-court discovery level and the attached discovery requests, as well as Noyola's lack of response to Defendant's offer to stipulate that the amount in controversy is below the jurisdictional threshold, the Court finds that State Farm has shown it is more likely than not that the amount in controversy is in excess of $75,000.

### III.   CONCLUSION

For the foregoing reasons, the Court finds that State Farm has established a jurisdictionally-sufficient amount in controversy by a preponderance of the evidence. The statutory requirements for the Court's subject matter jurisdiction are satisfied and, accordingly, Noyola's motion to remand is **DENIED**.

IT IS SO ORDERED.

DONE this 3rd day of July, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[37] *See, e.g.*, Johnson v. Dillard Dept. Stores, Inc., 836 F. Supp. 390, 394 (N.D. Tex. 1993) (treating refusal to stipulate to damages below threshold as a factor in favor of denying remand, but insufficient by itself); Cox v. Liberty Mut. and Credit Collection Servs., Civ. No. 3:10-CV-1956-M, 2011 WL 98374, at *3 (N.D. Tex. Jan. 12, 2011) (considering refusal to stipulate insufficient basis to deny remand when combined with specific and undisputed economic damages of $348).